UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SARAH KREBS**<br><br>Plaintiff,<br><br>**v.**<br><br><br>**MICHIGAN STATE POLICE et al.,**<br><br>Defendants. | **2:25-CV-13238-TGB-KGA**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br>**(ECF NO. 16)** |

Plaintiff Sarah Krebs brings this action against Defendants Michigan State Police ("MSP") and Colonel James F. Grady, II, alleging the following counts: (I) Retaliation/Retaliatory Harassment in Violation of Title VII, 42 U.S.C. § 2000e; (II) Retaliation in Violation of 42 U.S.C. § 1981, brought under 42 U.S.C. § 1983 against Defendant Grady; (III) Retaliation in Violation of the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201–211, brought against Defendant Grady in his individual capacity; and (IV) Hostile Environment in Violation of ELCRA, Mich. Comp. Laws § 37.2201–211, brought against Defendant Grady in his individual capacity. ECF No. 14. Defendants have filed a motion to dismiss. ECF No. 16. The Court held a hearing on the matter on July 21, 2026. For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

## I.   BACKGROUND

### 1.   Factual Background

In considering Defendants' motion to dismiss, the Court accepts as true the following allegations, which are drawn from Plaintiff's complaint.

Defendant Col. James F. Grady II is an employee of MSP. ECF No. 14, PageID.125. He serves as the Director of the Michigan State Police.

Plaintiff Krebs enlisted in the MSP in September 2000. *Id.*

On December 25, 2022, Plaintiff was promoted to the rank of Inspector as Commander of Recruiting and Selection and the Chief Diversity, Equity, and Inclusion ("DEI") Officer of the MSP. *Id.* at PageID.126.

### a.   *Events Preceding the June 25, 2024 Meeting*

While the claims in the Complaint arise out of a June 25, 2024 conversation between Plaintiff and Defendant Grady and subsequent purportedly retaliatory actions, the factual allegations contained in the Complaint span the period of 2022 to 2024. Many of these allegations concern events predating the alleged protected activity and are not themselves the basis of Plaintiff's claims. The Court briefly recounts several of those allegations below.

The Complaint contains multiple instances in 2022 and 2023 in which hiring decisions were made despite or because of former Director of the Michigan State Police, Col. Joseph Gasper's purported preference

for Black candidates. *See id.* ("The other candidate was a Black male from outside the agency, who Plaintiff later found out was the preferred candidate of Col. Gasper due to his race, not his qualifications."); *id.* at PageID.127 ("This was the second incident where Plaintiff became aware of the hiring bias that had been created in order to push forward the Colonel's desire to hire on the basis of race."). Col. Gasper announced his retirement in August 2023, *id.* at PageID.128, and none of Plaintiff's causes of action are predicated on actions taken by Col. Gasper.

The Complaint also contains detailed allegations concerning the December 2023 selection process for the Training Division Captain position, in which F/Lt. Tim Olson was selected instead of Plaintiff. *Id.* at PageID.129–32. Plaintiff alleges that she

> was later told that her interview was the best, and that she was the candidate selected by the hiring manager, LTC Michael Krumm, and panel member Major Beth Clark on December 18. However, Defendant Grady argued with LTC Krumm, and then overruled the rest of the panel in order to appoint F/Lt. Olson.

*Id.* at PageID.130 (emphasis omitted).

Plaintiff also alleges that in January 2024,

> Plaintiff met with LTC Brimacombe and Defendant Grady to discuss the MSP's "DEI Vision," in which Plaintiff presented them with a DEI Strategic Plan and steps to remove racial and sexual bias within the Grooming Standards and Selection Processes within the MSP. For example, there were Official Orders that barred enlisted employees from wearing "puffy hair," a thinly-veiled racial bias, and banned enlisted women

> from wearing colored nail polish. … However, Defendant Grady stated that he was "not ready" to make any changes to these orders to remove the bias.

*Id.* at PageID.132–33.

Plaintiff also alleges that she complained to Capt. Olson, the new Training Division Commander, about "the discriminatory nature of" the practice requiring recruits "to keep their hair as 'short as possible' on their first visit to recruit school 'for sanitary reasons.'" *Id.* at PageID.133. However, "[d]espite Plaintiff's complaints about the discriminatory nature of these practices, changes were not made to the training process and the discrimination continued." *Id.*

### b. *June 25, 2024 Meeting*

"On June 25, 2024, Plaintiff had a scheduled one-on-one meeting with Defendant Grady." *Id.* at PageID.135. This meeting was held on Microsoft Teams. *Id.* at PageID.136. At the time of this meeting, Plaintiff held the title of Chief DEI Officer. *Id.* at PageID.136–37.

Plaintiff alleges that "[t]his meeting was adversarial from the beginning." *Id.* Specifically, Plaintiff alleges that she raised the "issue regarding the vacant Recruiting and Selection Section (RSS) First Lieutenant position that had been left open for several months," According to the Complaint, Defendant Grady "began to speak in a raised, sharp voice while practically spitting at Plaintiff through the screen." *Id.* at PageID.136.

Plaintiff then

> told Defendant Grady that it appeared as though he was holding positions open for specific candidates that he was planning to place his personal choices in the positions. Plaintiff also stated that those actions were an unfair hiring practice and opened the MSP up to legal liability. Plaintiff felt that other candidates that were ready for the promotion at that time should be allowed to interview, and Defendant Grady was treating these candidates unfairly.

*Id.* at PageID.137.

Defendant Grady responded, "no one needs to know what I am planning; other Colonels have done the same in the past." *Id.* Then, Defendant Grady

> independently brought up the open CVED [Commercial Vehicle Enforcement Division] Captain spot, which at that time had not been filled for almost 8 months, by mockingly stating "I haven't filled the CVED position either, and no one needs to know why I'm not filling that position too… It's up to me when I fill or don't fill spots."

*Id.* at PageID.137–38. In response,

> Plaintiff reiterated that she believed Defendant Grady should not interfere in anything related to the civil service processes and let the selections play out. Plaintiff stated that she would not support Defendant Grady if he was trying to manipulate the civil service processes to diversify the agency, as that would be unfair and potentially illegal. Because Defendant Grady seemed to desire diversifying the agency, Plaintiff offered to work with him to root out the issue at the source of the problem—the relationship bias that exists in the selection processes, a problem that cannot be fixed overnight.

*Id.* at PageID.138. The call ended shortly thereafter. *Id.*

### c. Subsequent Events

At 1:47 p.m. on June 25, 2024,
all of Plaintiff's future scheduled one-on-one meetings with Defendant Grady were cancelled by Defendant Grady's administrative assistant, Heather Luebs, through December. The Colonel did not meet with her again and did not speak to her personally until January 2025, when Plaintiff was directed to hold a meeting with Defendant Grady by Poppy Hernandez

*Id.* at PageID.139.

"On July 16, 2024, Plaintiff met with Capt. Ken Dilg to discuss her involuntary movement from HR to the Professional Development Bureau (PDB)." *Id.* The Complaint does not clearly state when Plaintiff was moved to the Professional Development Bureau. Plaintiff also alleges that

Defendant Grady stated that Capt. Dilg would be her daily supervisor, but the organizational chart actually showed that she would be reporting to Dr. Liebler. Capt. Dilg mentioned that he had met with Defendant Grady about this change, and Defendant Grady said he wanted Plaintiff to be in more of an educational role, and added that she "has good ideas, but no follow through."

*Id.*

Plaintiff also alleges that,

Later that day, LTC Krumm held a bureau-wide meeting at the Training Academy where a new org chart was shown on the overhead screen. This chart showed Plaintiff on the same

6

line as the section commanders with her new "section:" the Cultural Enrichment & Education Section. This reorganization put her on the same level as the F/Lt's ("15s") that run their sections, even though she technically outranks them at the rank of Inspector, or a "SAM16." Further, the Organizational Development Division (ODD) was given the Recruiting and Selection section, which has been moved back to HQ and out of the training unit, but is not given to Plaintiff, even though she was the previous commander of that unit.

*Id.* at PageID.140. Plaintiff further alleges,

On July 19, 2024, Dr. Liebler emailed Plaintiff that she will be reporting to Defendant Grady. Dr. Liebler then advised her that she had to revise her Position Description, and requested that Plaintiff remove all references to recruiting and selection, as well as any mention of being part of the HR leadership team. Doing so took away any decision-making authority Plaintiff had, reverting her role to an educational role only. Verbally, Dr. Liebler told Plaintiff she was still carrying out her HR duties as the Chief DEI Officer.

On July 20, 2024, LTC Krumm sent out an email to PDB leadership, stating "we have also been advised that Insp. Krebs will likely need to remain a dotted line to the director's office on the org chart but will work through Dr. Liebler instead of ODD. This is for various reasons but the main one being if her position remained in ODD it would have negatively impacted the 15's in ODD. We are working through these issues."

*Id.* at PageID.140–41.

On August 8, 2024, Plaintiff hosted a meeting "with several other state agency DEI Officers," including "Gov. Whitmer's Chief DEI Officer, Poppy Hernandez." *Id.* at PageID.141.

7

Before the other attendees arrived, Plaintiff and Hernandez discussed Defendant Grady's leadership and Plaintiff's relationship with him. *Id.* at PageID.141–42. Plaintiff informed Hernandez that Grady and Plaintiff "used to have a good relationship, but it had been strained recently due to their disagreeing on Defendant Grady's involvement in selection processes and the likelihood of legal action arising as a result." *Id.* at PageID.142. After Plaintiff

> reiterated that she supports DEI efforts, but only through legal channels—not ones where people are discriminating against one group for another. Ms. Hernandez then pointed her finger in Plaintiff's face, stating that "you know the Governor put him there to do just that. He was appointed to his position to diversify the agency. He has been given those exact directions," implying that it was acceptable and encouraged for Defendant Grady to hire based on those he had close relationships with instead of those who were qualified.

*Id.*

> On August 15, 2024, Plaintiff received an email from an HR employee referencing her movement out of the HR Division and into the PDB, stating that she was initially thought to have to report to Defendant Grady, but "he did not seem receptive to this." Therefore, she was to report to Dr. Liebler in a section that Defendant Grady was now referring to as "Cultural Enrichment and Education (CEE)."

*Id.* at PageID.143.

> On August 26, 2024, LTC Krumm told Plaintiff

> that she will finally be allocated a staff and can move forward with two new hires, as they now have space at HQ for them.

> Later that week, LTC Krumm added that Plaintiff needed to move out of her office in HR and go to the 2nd floor to use her new desk space, a cubicle on the same floor as budget. This cubicle offered no privacy.

*Id.*

Sometime before September 9, 2024, Plaintiff "responded to a question a local chief had asked about marijuana law" and credited Maj. Hawkins with the information. *Id.* at PageID.144. On September 9, 2024, Plaintiff received calls from Maj. Hawkins and Dr. Liebler, asking Plaintiff to take down her post. *Id.* at PageID.144–45. Specifically, Dr. Liebler told Plaintiff "it was imperative that she took it down as soon as possible and that she would receive an email that would give her more context and what exactly to add to the post, as LTC Brimacombe felt it was factually wrong and MSP should not be posting legal advice." *Id.* at PageID.145. After Plaintiff took down the post, she "received a forwarded email chain where LTC Brimacombe accused Plaintiff, in an email with Plaintiff's entire chain of command, of not asking Maj. Hawkins permission to use his name and misunderstanding the law." *Id.* Plaintiff alleges that this "hypersensitivity about her forum post was due to targeted retaliation by leadership." *Id.* (emphasis omitted).

The Complaint cites a number of incidents dating from September 17, 2024 to January 27, 2025 that purportedly constitute retaliatory actions. *Id.* at PageID.148–49.

For instance, the Complaint recounts that a job posting for a Sergeant was eliminated, resulting in Plaintiff having to "engage as the first-line supervisor of these two newly-hired civilian employees." *Id.* at PageID.148. Plaintiff alleges that "[t]hese choices were yet another demotion of Plaintiff's duties, as she was now an Inspector supervising civilian analysts, which is what her job description was when she was a Sergeant 12 in the Missing Persons Unit." *Id.* (emphasis omitted).

Plaintiff also alleges that while she received 4% "Pay for Performance" in 2024, she only received 2.5% in 2025 "with no changes to her work ethic and still with a glowing performance appraisal." *Id.* at PageID.149.

On January 28, 2025, Plaintiff's "doctor made the decision that she needed to go on FMLA for stress." *Id.* at PageID.158.On March 3, 2025, after Plaintiff "returned to duty after taking FMLA stress leave," Plaintiff realized that her access to "IA Pro, the department's software for Internal Affairs reporting," had been removed. *Id.* at PageID.149.

In subsequent conversations between Plaintiff and LTC Brimacombe LTC Brimacombe offered an explanation as to why Plaintiff's access to IA Pro was removed. *Id.* at PageID.149–50. During one of these meetings, LTC Brimacombe "cautioned Plaintiff, stating 'it's important that you're careful in who you confide in. Because there is a feeling that you are talking about stuff with other people that is making

10

them feel uncomfortable, like actions the department is taking against you.'" *Id.* at PageID.150.

Plaintiff's access to IA Pro was subsequently restored with some limitations. *Id.* at PageID.150–51.

The Complaint also describes an investigation, conducted by Plaintiff, into the sexual harassment of a female recruit by Training Division staff members. *Id.* at PageID.152–55. After Plaintiff was informed that the investigation against one of the involved troopers had been closed, she contacted Internal Affairs personnel to voice her concerns. *Id.* After one such conversation, the Internal Affairs commander "agreed that there was proof, but stated that there simply was not 'mechanism' to address this issue, thereby rendering them unable to sustain the charge." *Id.* at PageID.153. Plaintiff alleges that "[u]ltimately, no one contacted by Plaintiff felt that this rose to the level of sexual harassment, and it fell on deaf ears." *Id.* at PageID.154. "Eventually, the Labor Relations Section of HR published the 'Employee Relations' memo, which shared information about the incident to all MSP employees, outing both the female sergeant and the female recruit involved." *Id.* On November 22, 2024, Plaintiff was contacted "by LTC Krumm to inform her that the incident is 'dead.'" *Id.* at PageID.155. The Complaint does not state how these particular allegations relate to Plaintiff's contention that she was retaliated against for opposing Defendant Grady's alleged hiring practices.

Lastly, the Complaint recounts a December 9, 2024 incident at the Renaissance Center in Detroit, MI, at which she was purportedly sexually harassed. *Id.* at PageID.155. Specifically, Plaintiff alleges that she was forcibly kissed by a male lieutenant ("T.W.") in front of other agency members. *Id.*

The next day, Plaintiff confronted T.W. "about the inappropriateness of his actions." *Id.* However, "[i]nstead of apologizing, he doubled down on the situation, arguing with Plaintiff and claiming that the scenario could be chalked up to their being friends." *Id.* On December 11, 2024, Plaintiff and T.W. had another conversation, by the end of which, "Plaintiff felt as though they had reached a mutual understanding, as they both were open and honest with each other throughout the conversation." *Id.* at PageID.156.

"On December 17, 2024, Plaintiff was asked by Ms. Swain-Mills if T.W. had kissed her. Plaintiff has no idea how this became public knowledge, and when she inquired, Ms. Swain-Mills said that Defendant Grady had told her." *Id.*

On January 8, 2025, "F/Lt. Bock advise[d] Plaintiff that LTC Krumm filed an IA report on her behalf for the incident involving T.W. at the Leadership Forum last December. This investigation was unexpected, and Plaintiff felt extremely emotional and blindsided, but went through with the interview on the spot to address it immediately." *Id.* (emphasis omitted).

"Later that month," LTC Krumm informed Plaintiff during a Microsoft Teams meeting that "she was under investigation for 'something' stemming from the sexual harassment investigation." *Id.* at PageID.156–57. "When asked for more context, LTC Krumm said that there are 'allegations' against her, and that she can't talk to any other witnesses, including Plaintiff's husband, who is also in the MSP." *Id.* at PageID.157.

"LTC Krumm then told Plaintiff that she was being reassigned from her position as the DEI officer." *Id.*

> LTC Krumm then informed Plaintiff that, on a so-called unrelated note, she needed to turn in her take-home vehicle by the end of the week. When asked if there would be another vehicle assigned to her, LTC Krumm responded that she would only be able to check out a pool car from HQ, as per LTC Brimacombe.
>
> When asked for more information about this, Plaintiff was informed that many others in the department would eventually have to return their vehicles—however, other employees were given until August 1 to do so, not "at the end of the week" on January 28.

*Id.* at PageID.157–58 (emphasis omitted).

> LTC Krumm then sent her an email containing a chain that hadn't been deleted. In the chain, there was a conversation between Insp. Gee-Cram and LTC Brimacombe discussing the reassignment of Plaintiff that confirmed that through [sic] LTC Brimacombe that Defendant Grady advised that he wanted her working three days in the Professional Development Bureau Office in person, which is above the required amount for State of Michigan members working for

13

> MSP HQ, which was two days a week. Defendant Grady also said "if" she has enough work, she is permitted to work from home two days a week.

*Id.* at PageID.158.

On January 31, 2025, Plaintiff was interviewed "as a Principle" regarding the allegations made against her in connection with a sexual-harassment investigation. *Id.* at PageID.159.

> During this interview, Plaintiff was questioned about an unrelated sexual harassment incident that was perpetrated against her years prior in which she was groped. Plaintiff later found out that this was to become a separate internal investigation, making it the third that month that she would be subjected to. Digging up past incidents was extremely traumatic for Plaintiff, who was not expecting to have to relive old sexual harassment memories. To make matters worse, she was later told that there was insufficient evidence to sustain a claim for that incident, so that trauma was forced back upon her for no reason.

*Id.* (emphasis omitted). "As a result of these investigations, Plaintiff began trauma therapy on February 9, 2025." *Id.*

Two weeks later, Plaintiff was informed that "all of the cases have been closed." *Id.* "In the closing memorandum of the unwanted kissing complaint against T.W., it stated that Plaintiff filed this complaint herself, which is untrue—it was filed by LTC Krumm on her behalf without alerting her. Plaintiff requested a correction be made." *Id.* at PageID.159–60 (emphasis omitted).

14

"These investigations and their contrarious outcomes caused Plaintiff severe distress, anxiety, and emotional suffering." *Id.* at PageID.160 (emphasis omitted).

### 2.    Equal Employment Opportunity Commission Charge

Sometime prior to June 20, 2025, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). ECF No. 16-2. In that charge, Plaintiff alleges that she has been "discriminated against by the Michigan Department of State Police (MSP) on the basis of sex (female), and subjected to sexual harassment, unequal treatment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964." *Id.* at PageID.218. (emphasis omitted).

Specifically, Plaintiff alleges that she "was subjected to pervasive and unwanted conduct of a sexual nature by several co-workers." *Id.* Plaintiff further alleges that "[d]espite submitting to several internal investigations through the Professional Standards Section, my concerns were inadequately addressed. In one instance, I was subjected to a retaliatory internal affairs complaint. These complaints were closed with unfounded and not sustained statuses." *Id.*

Next, Plaintiff alleges that she "experienced differential treatment on the basis of sex." *Id.*

Plaintiff also alleges that

[f]ollowing [her] attempts to raise concerns regarding hiring, promotion and selection processes, sexual harassment and

15

the unequal treatment *of women* in the department, [she] was subjected to retaliation including having meetings cancelled, removal and reassignment from the Human Resources Division and the HR Leadership Team, removal of staff, exclusion from special projects regarding selection processes, increased scrutiny, unwarranted punitive actions, and reduced career advancement opportunities.

*Id.* at PageID.219.

On June 20, 2025, the EEOC gave notice to MSP that "a charge of employment discrimination has been filed." *Id.* at PageID.220. Specifically, the notice states that "[t]he circumstances of the alleged discrimination are based on Sex, and involve issues of Sexual Harassment, Other Issue Not Listed Above," *Id.*

On July 17, 2025, the EEOC issued a right to sue letter. ECF No. 14, PageID.124.

On October 1, 2025, Plaintiff retired. *Id.* at PageID.162.

### 3. Procedural Background

Plaintiff initiated suit on October 14, 2025. ECF No. 1. On January 6, 2026, Plaintiff filed the operative Amended Complaint (the "Complaint"). ECF No. 14. Plaintiff brings following counts: (I) Retaliation/Retaliatory Harassment in Violation of Title VII, § 2000e; (II) Retaliation in Violation of § 1981, brought under § 1983 against Defendant Grady; (III) Retaliation in Violation of ELCRA, Mich. Comp. Laws § 37.2201–211, brought against Defendant Grady in his individual capacity; and (IV) Hostile Environment in Violation of ELCRA, Mich.

16

Comp. Laws § 37.2201–211, brought against Defendant Grady in his individual capacity. *Id.*

On January 20, 2026, Defendants filed a motion to dismiss. ECF No. 16. Plaintiff responded on February 10, 2026, ECF No. 18, and Defendants replied on February 23, 2026, ECF No. 19.

On June 23, 2026, the Court scheduled a motion hearing on Defendants' motion to dismiss for July 21, 2026. ECF No. 20.

On July 20, 2026, Plaintiff filed a motion for leave to file a second amended complaint. ECF No. 22.

On July 21, 2026, the Court held a hearing on Defendants' motion to dismiss.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff,

17

accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.* at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56; *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

### III.  DISCUSSION

In their motion to dismiss, Defendants raise following arguments:

(1)  Count I fails to state a claim against Defendant Grady because Title VII does not permit individual liability;

(2)  Count I must be dismissed against Defendant MSP because Plaintiff's EEOC charge did not include the allegations asserted in Count I;

18

(4)   Count I against Defendant MSP must be dismissed because Plaintiff does not plausibly allege that she engaged in a protected activity;

(5)   Count I against Defendant MSP must be dismissed because Plaintiff does not plausibly allege an adverse employment action;

(6)   Count I against Defendant MSP must be dismissed because Plaintiff does not plausibly allege causation;

(7)   Count II against Defendant Grady in his official capacity must be dismissed;

(8)   Count II against Defendant Grady in his individual capacity must be dismissed for the same reasons as her Title VII claim;

(9)   Count II against Defendant Grady in his individual capacity must be dismissed because Plaintiff fails to allege personal involvement;

(10)  Count II against Defendant Grady in his individual capacity must be dismissed because Defendant Grady is entitled to Qualified Immunity;

(11)  Count III must be dismissed for the same reasons as her Title VII claim;

(12)  Counts III and IV must be dismissed because they are barred by the Eleventh Amendment;

(13)  Count III must be dismissed because Plaintiff fails to plausibly allege any specific retaliatory conduct;

(14)  Count IV must be dismissed because Plaintiff fails to allege a hostile environment under ELCRA;

(15)  If Counts III and IV are not dismissed, the Court should decline to assert supplemental jurisdiction.

ECF No. 16.

The Court will discuss each of these arguments in turn.

### 1.   **Count I**

In Count I, Plaintiff alleges that "[a]fter Plaintiff expressed concerns about being sued due to potentially unlawful promotional

procedures, including Defendant Grady hiring *on the basis of race*, Plaintiff was subjected to retaliation and retaliatory harassment including." ECF No. 14, PageID.161. Specifically, Plaintiff lists following retaliatory actions:

a) Demotions without justification;
b) Not receiving promotions she had earned due to the exact hiring practices she had raised concerns about;
c) Public demoralization in front of other agency members; and
d) Ostracization by Defendants, as described above in General Allegations, because she expressed concerns of harassment and discrimination in violation of Title VII.

*Id.*

### a. Whether Title VII permits individual liability

Defendants move to dismiss Count I against Defendant Grady because "Title VII does not allow suits against individual supervisors or employees." ECF No. 16, PageID.196. Defendants argue that "[t]he Sixth Circuit has been unequivocal on this point: 'a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII.'" *Id.* (citing *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001)).

Plaintiff "concedes that Title VII can only apply to MSP in this case." ECF No. 18, PageID.243.

Thus, Defendants and Plaintiff agree that Count I should be dismissed against Defendant Grady. Accordingly, Count I is **DISMISSED WITH PREJUDICE** as to Defendant Grady.

> ### b. *Whether Plaintiff's EEOC Charge includes the allegations asserted in Count I*

Defendants argue that Plaintiff has failed to exhaust her Title VII claim. ECF No. 16, PageID.197–99. Specifically, Defendants argue that although the complaint asserts that Plaintiff "'expressed concerns about being sued' regarding allegedly 'potentially unlawful' promotional procedures, including vague and unsubstantiated claims that Col. Grady engaged in 'hiring on the basis of race,'" Plaintiff's EEOC charge "makes no mention of the allegations in Am. Compl. ¶ 111 or any other race-based claims or theories." *Id.* at PageID.197–98. "Instead, her Charge focused exclusively on gender-based claims." *Id.* at PageID.198.

Plaintiff responds that

> Plaintiff's initial EEOC complaint detailed sexual harassment, discrimination, and retaliation after attempting to bring those issues forward. These charges brought forward in Plaintiff's EEOC claim are reasonably related to those brought in the present complaint. Plaintiff established a hostile work environment was present while at MSP, and those allegations alone align with those stated in the Complaint. Plaintiff described sexual harassment and unequal treatment, which is also mirrored in the Complaint. Plaintiff also states she experienced "retaliation" after her "attempts to raise concerns regarding hiring, promotion and selection processes, sexual harassment and the unequal treatment of women in the department." She explicitly states

that she suffered from retaliation and alludes to retaliatory conversations and events that are detailed in the Complaint.

ECF No. 18, PageID.245.

Because she did not raise any race-related discrimination claims before the EEOC, the Court agrees with Defendants: Plaintiff has not exhausted her administrative remedies.

An employee raising a Title VII claim must exhaust their administrative remedies by filing an EEOC charge within a certain time period after the allegedly wrongful act. *See* 42 U.S.C. § 2000e-5(e)(1). The purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 471 (6th Cir. 2008) (citing *Dixon v. Ashcroft,* 392 F.3d 212, 217 (6th Cir. 2004)). Accordingly, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon*, 392 F.3d at 217.

At the same time, the administrative exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citation omitted). Instead, "the EEOC complaint

22

should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Id.* (citation omitted).

Here, the entire substance of Plaintiff's EEOC charge focuses on alleged discrimination on the basis of sex, alleged sexual harassment, and purported retaliation for Plaintiff's "attempts to raise concerns regarding hiring, promotion and selection processes, sexual harassment and the unequal treatment *of women* in the department." ECF No. 16-2, PageID.218. It does not mention race, beyond identifying Plaintiff's race as "Caucasian." *Id.*

The Court finds that the scope of an EEOC investigation "reasonably expected to grow out of the charge of discrimination," *Dixon*, 392 F.3d at 217, would not cover the substance of Count I of the Complaint. Count I alleges that Defendants retaliated against Plaintiff for having "expressed concerns about being sued due to potentially unlawful promotional procedures, including Defendant Grady hiring *on the basis of race.*" ECF No. 14, PageID.161. The EEOC charge, on the other hand, does not suggest that Plaintiff opposed race-conscious hiring practices or complained that employment decisions were being made on the basis of race. In other words, the EEOC charge identifies protected activity relating to alleged sex discrimination and unequal treatment of women, whereas Count I is premised on Plaintiff's alleged opposition to

23

race-based hiring decisions. Accordingly, Plaintiff has failed to exhaust her administrative remedies as to Count I.

This conclusion is consistent with the well-established principle that an EEOC charge alleging discrimination on one basis does not exhaust claims alleging discrimination on a distinct basis. For instance, the Sixth Circuit has ruled, that when the "EEOC charge of discrimination filed by appellant alleges only race discrimination, and … cannot be construed as involving sex-based discrimination even under the most solicitous interpretation of the language," a claim alleging sex-based discrimination should be dismissed. *Leigh v. Bureau of State Lottery*, 1989 WL 62509, at *4 (6th Cir. 1989); *see Bargo v. Goodwill Indus. of Kentucky, Inc.*, 969 F. Supp. 2d 819, 824 (E.D. Ky. 2013).

In *Leigh*, the Sixth Circuit expressly dismissed the notion that "the EEOC would have investigated the possibility of sex discrimination in the course of investigating race discrimination because the two are so closely related factually." *Leigh*, 1989 WL 62509, at *4.

Nor can Plaintiff "rely on a conclusory 'retaliation' designation [in her EEOC charge] as the catch-all for all possible claims she wishes to make." *Williams v. Shelby Cnty. Bd. of Educ.*, No. 17-02050, 2020 WL 1822475, at *6 (W.D. Tenn. Apr. 10, 2020). Thus, even construing the EEOC charge liberally, the Court cannot conclude that a generic reference to retaliation exhausted a claim based on Plaintiff's alleged opposition to race-based hiring practices. *Cf. Vinson v. Ford Motor Co.*,

24

806 F.2d 686, 688 (6th Cir. 1986) ("All plaintiff was required to do was identify that conduct which he felt was the result of age discrimination. It does not constitute an unjustifiable burden on claimants to require them to specify each such event.").

Accordingly, the Court finds that Plaintiff has failed to exhaust her administrative remedies as to Count I, because the factual allegations in support of that Count relate to Plaintiff's alleged opposition to race-based hiring decisions, which must therefore be **DISMISSED WITH PREJUDICE**.[1] However, the dismissal with prejudice does not bar Plaintiff from bringing a claim under Title VII premised on Plaintiff's opposition to *gender*-based hiring decisions, provided that such a claim was properly exhausted.

### 2. Count II

In Count II, Plaintiff alleges retaliation in violation of § 1981, brought under § 1983 against Defendant Grady. ECF No. 14, PageID.162.

Specifically, Plaintiff claims that she "engaged in protected activity under 42 USC § 1981 by opposing Defendant Grady's racial discrimination against members of the MSP." *Id.* "Defendant Grady, who is known to be vindictive, retaliated against Plaintiff as described above

---

[1] Accordingly, because the Court dismisses Count I because Plaintiff's failed to exhaust her administrative remedies, the Court does not address Defendants' other arguments in favor of dismissal of Count I.

because she opposed Grady's racial discrimination against MSP members." *Id.*

> a. *Whether Count II can be brought against Defendant Grady in his official capacity*

Defendants argue that

> Plaintiff's 42 U.S.C. § 1981 claim against Col. Grady in his official capacity must be dismissed because an official-capacity claim "is not a suit against the official but rather is a suit against the official's office," making it "no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted). Thus, Plaintiff's official-capacity claim against Col. Grady is properly construed as a claim against the MSP. … Thus, Count II against Col. Grady in his official capacity must be dismissed with prejudice.

ECF No. 16, PageID.204–205.

Plaintiff "concedes that Count II shall continue against Def. Grady in his Individual Capacity only." ECF No. 18, PageID.251.

Thus, Defendants and Plaintiff agree that Count II should be dismissed against Defendant Grady in his official capacity. Accordingly, Count II is **DISMISSED WITH PREJUDICE** as to Defendant Grady in his official capacity.

> b. *Whether Count II fails to state a claim for retaliation*

Next, Defendants argue that Count II fails to state a claim for retaliation. *See* ECF No. 16, PageID.206 ("the elements of a retaliation claim under § 1981 are the same as those under Title VII. … Thus, Col.

Grady incorporates by reference the preceding Title VII retaliation analysis of Count I against the MSP. *See* Sec. I(c)(1)-(3)." (citation omitted)).

"The elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019). Accordingly, "[t]o survive dismissal, [Plaintiff] must allege that (1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter took an action that was materially adverse to her; and (4) there was a causal connection between the protected activity and the materially adverse action." *Id.* Defendants argue that the Complaint fails to allege elements (1), (2), and (4). ECF No. 16, PageID.199–204. The Court will address these elements in turn.

First, a plaintiff must allege that she engaged in a protected activity. *Boxill*, 935 F.3d at 520.

The relevant passage of the Complaint recounts that during the June 25, 2024 meeting, Plaintiff

> told Defendant Grady that it appeared as though he was holding positions open for specific candidates that he was planning to place his personal choices in the positions. *Plaintiff also stated that those actions were an unfair hiring practice and opened the MSP up to legal liability.* Plaintiff felt that other candidates that were ready for the promotion at that time should be allowed to interview, and Defendant Grady was treating these candidates unfairly.
>
> …

27

> Plaintiff reiterated that she believed Defendant Grady should not interfere in anything related to the civil service processes and let the selections play out. *Plaintiff stated that she would not support Defendant Grady if he was trying to manipulate the civil service processes to diversify the agency, as that would be unfair and potentially illegal.*

ECF No. 14, PageID.137–38.

Defendants argue that "Plaintiff's generalized concern about unspecified, allegedly race-based promotional practices (Am. Compl. ¶¶ 109–113, PageID.161-162) is insufficient." ECF No. 16, PageID.201. Specifically, Defendants argue that Plaintiff "does not claim that she opposed any specific practice; rather, she alleges only that she expressed concern about a vague, unspecified lawsuit and does not identify any particular conduct that she 'actually believed' violated the law." *Id.* at PageID.201–202.

> Plaintiff responds that

> the pleadings clearly demonstrate that the initial conversation where Plaintiff had this discussion with Defendant Grady was made on June 25, 2024 (ECF No. 14, PageID.135, ¶ 41) where she expressed that Defendant Grady was participating in an "unfair hiring practice [that] opened up the MSP to legal liability." Id., PageID.137, ¶ 44. She specifically brought up the vacant RSS First Lieutenant position as an example of Defendant Grady keeping a position open in order to promote based on his own (race-based) metrics, which then delved into a discussion about the CVED Captain position remaining open as well. Id., PageID.136, ¶ 42; PageID.137, ¶ 44. These were *specific* hiring situations that Plaintiff brought up in order to confront Defendant

Grady about the race-based metrics he was following, which he then reacted poorly to.

ECF No. 18, PageID.247.

The Court agrees with Plaintiff.

"[O]pposing any practice that the employee reasonably believes to be a violation of Title VII" constitutes protected activity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). "The Supreme Court has held that the term 'oppose' should be interpreted based on its ordinary meaning: to resist or antagonize to contend against; to confront; resist; withstand." *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344 (6th Cir. 2021) (cleaned up). Thus, "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Id.* (cleaned up) (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)).

Nonetheless, "[a] plaintiff alleging Title VII retaliation, based on the 'opposition' provision, is required to put her employer on notice that her complaint concerns statutory rights." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 373 (6th Cir. 2013) (citation omitted). Accordingly, "[a]n employee may not invoke the protections of [Title VII] by making a vague charge of discrimination." *Id.* (citation omitted). In other words, an individual need not invoke Title VII by name but "must be sufficiently

29

clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

An individual's communication to their employer that its activity is unlawful must not be explicit and can be implicit. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015) ("the EEOC Compliance Manual … has provided that employees are protected from retaliation 'if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity' is unlawful" (citing 2 EEOC Compliance Manual, Section 8: Retaliation § 8–II(B)(1) (May 20, 1998)).

The Court finds that Plaintiff's statements to Defendant Grady during the June 25, 2024 meeting, when construed in the light most favorable to Plaintiff, in the context of Plaintiff's position as Chief DEI officer, constitutes a protected activity for purposes of §1981 retaliation.

Specifically, Plaintiff—"the Chief DEI Officer"—informed Defendant Grady that (1) his promotional practices were "an unfair hiring practice [that] opened the MSP up to legal liability" and (2) "if he was trying to manipulate the civil service processes to diversify the agency … that would be unfair and potentially illegal." *Id.* In context— when construed in the light most favorable to Plaintiff—a reasonable employer would understand Plaintiff's statements to be "an assertion of rights protected by the statute." *Kasten*, 563 U.S. at 14.

30

Additionally, Plaintiff's statements—mentioning Defendant Grady's potential intention to diversify by holding positions open for specific candidates—go beyond a mere "vague charge of discrimination" that would not be protected by Title VII. *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 645 (6th Cir. 2015).

In their reply brief, Defendants argue that

> The allegation contains no reference to race, race-based decision-making, or any other conduct protected under Title VII. Critically, the term "race-based" does not actually appear in the Complaint. (*See* Am. Compl. ¶ 42, ECF 14, PageID.136). By inserting "race-based" into the quote, Plaintiff's brief misrepresents her Complaint in an apparent attempt to turn a general critique of management decisions into alleged protected activity.
>
> …
>
> Plaintiff did not use the term race. Moreover, "diversify" is not synonymous with race, nor does it allege hiring "on the basis of race," which is the sole Title VII Complaint theory. (*See* Am. Compl. ¶ 111, ECF 14, PageID.161).

ECF No. 19, PageID.264–65.

The Court disagrees. While it is true that Plaintiff does not specifically allege that she expressed concerns that Defendant Grady's promotional practices constituted unlawful racial discrimination, Defendants point to no caselaw showing that such specificity is required.

In any case, while "diversify" is not synonymous with race, informing an employer that efforts to diversify may be illegal and unfair would lead a reasonable employer to understand that Plaintiff's

statements amounted to "an assertion of rights protected by the statute." *Kasten*, 563 U.S. at 14; *see Jackson v. Arkansas Game & Fish Comm'n*, No. 23-00967, 2025 WL 1401435, at \*4 (E.D. Ark. May 14, 2025) ("Jackson satisfies the first element because he engaged in protected activity when he complained to a director in the summer of 2021 that he had concerns about the lack of diversity at the Commission."). Nothing more is required.

Plaintiff must also allege that "the Defendant thereafter took an action that was materially adverse to her." *Boxill*, 935 F.3d at 520.

Defendants argue that

> Plaintiff alleges an unspecified "demotions," the denial of an unspecified promotion, public demoralization in some undefined manner, and ostracism, asserting only that these actions occurred "in part" because she engaged in the alleged protected activity. (Am. Compl. ¶ 111(a)-(d), PageID.161). These vague and conclusory allegations fail to identify any concrete facts sufficient to state a plausible claim for retaliation.
>
> …
>
> Plaintiff does not allege any reduction in rank, salary, pay grade, or title. She retained the rank of Inspector ("SAM16") throughout and does not allege any loss in classification, base pay, or official position status. (Am. Compl. ¶ 50, PageID.140). Thus, her conclusory "demotion" allegation does not constitute an adverse employment action.

ECF No. 16, PageID.203.

In response, Plaintiff identifies following adverse employment actions:

> Her take-home car was taken away significantly earlier than it needed to be, especially compared to others in her position (ECF No. 14, PageID.135, ¶ 98), her bonus pay was reduced (Id., ¶ 74), she was demoted (Id., ¶ 97), and she lost access to a database vital to her job duties (Id., ¶ 79)

ECF No. 18, PageID.248. In another portion of her brief, Plaintiff also points to following adverse employment actions:

> her removal from the HR team on July 16, 2024 (Id., ¶ 48); the uncertainty that occurred immediately after due to her position not having a clear supervisor anymore on July 20, 2024 (Id., ¶ 53); her demotion on August 15, 2024 (Id., ¶ 59); removal from her office on August 26, 2024 (Id., ¶ 60); and the indication that she was being monitored more closely than others on September 26, 2024 (Id., ¶ 66).

*Id.* at PageID.250. The Complaint also includes a number of other alleged actions which Plaintiff argues are adverse employment actions. *See id.* at PageID.163–66.

Considering the nature and specificity of Plaintiff's allegations, they appear to meet the legal definition of adverse employment actions.

An "adverse employment action" is an action that constitutes a "materially adverse change in the terms and conditions of employment." *Summer v. Detroit Pub. Schs. Cmty. Dist.*, No. 24-1729, 2026 WL 637407, at *5 (6th Cir. Mar. 6, 2026). Whether an employment action is a materially adverse change "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the

33

circumstances." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006); *accord Summer*, 2026 WL 637407, at *5.

However, "a 'materially adverse' change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (citation omitted).

The Court finds that some of the actions identified by Plaintiff constitute adverse employment actions: a reasonable person in Plaintiff's position would find that receiving a reduction in bonus, *id.* at PageID.149, and being removed from her post, *id.* at PageID.157, would be materially adverse changes to her employment. Having already determined that Plaintiff has plausibly alleged adverse employment actions, the Court need not decide whether every additional action alleged in the Complaint independently constitutes one.

Plaintiff must also allege that "there was a causal connection between the protected activity and the materially adverse action." *Boxill*, 935 F.3d at 520.

Defendants argue that

> Plaintiff does not allege direct or circumstantial evidence that, if true, would show that MSP's alleged actions were motivated by her purported protected activity or any temporal or other circumstances suggesting a causal link. As Plaintiff does not allege the date, or time period, when the alleged protected activity took place, it is impossible to assess temporal proximity. Moreover, the Complaint otherwise lacks

34

> any factual allegations connecting her generalized concerns to the alleged adverse actions, she fails to plausibly allege causation.

ECF No. 16, PageID.204.

Plaintiff responds that "where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." ECF No. 18, PageID.249 (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (2008)). Plaintiff argues that

> [f]rom the dates listed within the Amended Complaint, it is clear to any reader that there is, in fact, temporal proximity between the events that Plaintiff lists to demonstrate causation, starting on June 25, 2024 (Id., ¶ 41), when Plaintiff had her initial confrontation with Defendant Grady about his illegal hiring practices, to all of the adverse actions that followed over the next 9 months, each of which are dated through March 20, 2025

ECF No. 18, PageID.250.

The Sixth Circuit has held that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey,* 516 F.3d at 525. However, "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time,

usually less than six months." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566–67 (6th Cir. 2000) (citing *Parnell v. West*, 1997 WL 271751 at *3 (6th Cir. 1997)). Thus, even a time lag of seven months does not ordinarily support an inference of a causal link. *See Parnell*, 1997 WL 271751 at *3 ("A time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months."); *id.* at *3 n.1 ("This court has ruled previously that a period of more than three months is too long to support an inference of retaliation."); *Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434, 448 (6th Cir. 2013) ("A time period greater than six months, without more, is not a sufficiently short period of time to satisfy the causal connection element of a retaliation claim.").

Outside of this short window, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525.

In her response, Plaintiff relies exclusively on temporal proximity to establish causation. ECF No. 18, PageID.249–50. Thus, to the extent Plaintiff seeks to establish causation based solely on timing, she must show that the alleged adverse employment actions occurred sufficiently close in time to her protected activity. *See Mickey*, 516 F.3d at 525.

Plaintiff alleges that following purportedly retaliatory conduct occurred close in time to her protected activity:

> her removal from the HR team on July 16, 2024 (Id., ¶ 48); the uncertainty that occurred immediately after due to her position not having a clear supervisor anymore on July 20, 2024 (Id., ¶ 53); her demotion on August 15, 2024 (Id., ¶ 59); removal from her office on August 26, 2024 (Id., ¶ 60); and the indication that she was being monitored more closely than others on September 26, 2024 (Id., ¶ 66).

ECF No. 18, PageID.250.

However, while the Court finds that Plaintiff alleges other adverse employment actions in other parts of the Complaint, none of these actions constitute adverse employment actions.

First, Plaintiff's "involuntary movement from HR to the Professional Development Bureau" on July 16, 2024, ECF No. 14, PageID.139, is not a "materially adverse" change in employment conditions. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) ("reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims"). Plaintiff does not allege that she received a reduction of salary as a result of her "involuntary movement" and it appears that she was able to keep her title as "the Chief DEI Officer." ECF No. 14, PageID.139.

Additionally, while Plaintiff alleges that "Defendant Grady said he wanted Plaintiff to be in more of an educational role," *id.*, "a mere … alteration of job responsibilities," does not constitute a "materially adverse" change in employment conditions.

Second, while Plaintiff's response cites to the "uncertainty that occurred immediately after due to her position not having a clear supervisor anymore on July 20, 2024 (Id., ¶ 53)," ECF No. 18, PageID.250, the cited paragraph of the Complaint, *see* ECF No. 14, PageID.141, does not mention such uncertainty. In any case, "uncertainty" over "not having a clear supervisor" is "a mere inconvenience," *Mitchell*, 389 F.3d at 182, and does not amount to a "materially adverse" change in employment conditions.

Third, while Plaintiff's response mentions a "demotion on August 15, 2024 (Id., ¶ 59)," ECF No. 18, PageID.250, the cited paragraph of the Complaint does not mention a demotion, *see* ECF No. 14, PageID.143. Instead, that paragraph references that while Plaintiff was "initially thought to have to report to Defendant Grady," she would now report "to Dr. Liebler in a section that Defendant Grady was now referring to as 'Cultural Enrichment and Education (CEE).'" *Id.* However, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885.

Fourth, Plaintiff's "harsh downgrade" to a cubicle on the second floor, ECF No. 14, PageID.143–44, is a "mere inconvenience" and does not amount to an adverse employment action. *See, e.g.*, *Mitchell*, 389 F.3d at 183 (being moved to a less desirable workspace does not amount to a "materially adverse employment action"); *Mikolaenko v. New York Univ.*,

38

No. 16-413, 2017 WL 4174928, at *9 (S.D.N.Y. Sept. 7, 2017) ("moving Plaintiff to a small closet-like room with no windows and poor ventilation in a very busy traffic area [was] a mere inconvenience rather than an adverse employment action").

Fifth, while Plaintiff's response mentions a "that she was being monitored more closely than others on September 26, 2024 (Id., ¶ 66)," ECF No. 18, PageID.250, the cited paragraph of the Complaint does not mention that she was being "monitored more closely than others." ECF No. 14, PageID.146. In any case, the September 26, 2024 conversation, even if it did indicate that Plaintiff was "being monitored more closely than others," does not amount to an adverse employment action.

Nor does the rest of the Complaint allege any adverse employment actions that occur closely enough in time "to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey*, 516 F.3d at 525; *Paasewe*, 530 F. App'x at 418 n.6 ("previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months" (citation omitted)).

For instance, although the Court has found that the 2025 reduction in Plaintiff's bonus constitutes a materially adverse employment action, the Complaint does not specify when decisions around bonuses were made. ECF No. 14, PageID.149.

39

Next, although the Court has found that being removed from her post constitutes a materially adverse employment action, this removal appears to have occurred in late January 2025, *id.* at PageID.156–57, more than seven months after the June 25, 2024 meeting. Accordingly, her removal from the post has not occurred sufficiently close in time to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. *See Parnell*, 1997 WL 271751 at *3 ("A time lag of seven months does not necessarily support an inference of a causal link; previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months."); *id.* at *3 n.1 ("This court has ruled previously that a period of more than three months is too long to support an inference of retaliation."); *Nicholson*, 530 F. App'x at 448 ("A time period greater than six months, without more, is not a sufficiently short period of time to satisfy the causal connection element of a retaliation claim.").

The list of purportedly retaliatory actions listed in Counts III or IV of the Complaint, *see id.* at PageID.163–66, fares no better: each of these

is either not a materially adverse employment action[2] or did not occur close in time to the June 25, 2024 meeting.[3]

In summary, Plaintiff's response brief relies exclusively on temporal proximity to establish causation. ECF No. 18, PageID.249–50. However, none of the employment actions that the Court finds are

---

[2] For instance, having her one-on-one meetings with Defendant Grady cancelled directly after the June 25, 2024 meeting or having to return her take-home car earlier than other employees are not a materially adverse employment action. *See Wallace v. Edward W. Sparrow Hosp. Ass'n, Inc.*, No. 16-1261, 2018 WL 10397034, at *8 n.7 (W.D. Mich. Mar. 2, 2018) ("cancelling the meeting, even at the last minute, is not an adverse employment action"), *aff'd sub nom. Wallace v. Edward W. Sparrow Hosp. Ass'n*, 782 F. App'x 395 (6th Cir. 2019); *Foster v. Mary Free Bed Rehab. Hosp.*, No. 13-1350, 2015 WL 9487903, at *3 (W.D. Mich. Aug. 6, 2015) ("An employee's perception that he or she was shunned or ostracized is generally not a materially adverse action."); *cf. Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 ("petty slights, minor annoyances, and simple lack of good manners" are not materially adverse employment actions); *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (an adverse employment action "typically inflicts direct economic harm" (citation omitted)).

[3] For instance, Plaintiff realized that her access to IA Pro had been removed on March 3, 2025, more than eight months after the June 25, 2024 meeting. *See* ECF No. 14, PageID.149. This event does not occur close enough in time to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey*, 516 F.3d at 525; *Paasewe*, 530 F. App'x at 418 n.6 ("previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months" (citation omitted)).

materially adverse, when read in the light most favorable to Plaintiff, occurred sufficiently close in time to allow for an inference of causation.

Nor does the Complaint contain any allegations of facially retaliatory conduct, beyond conclusory allegations, to otherwise establish a causal relationship between any materially adverse employment actions and Plaintiff's protected activity.

Thus, the Complaint has failed to state a claim for retaliation. Accordingly, Defendants' motion to dismiss Count II on this ground is **GRANTED** and Count II is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity.

Because the Court finds that Plaintiff has failed to state a claim for retaliation, the Court does not address Defendants' argument that Plaintiff has failed to allege a direct personal involvement of Defendant Grady in any unlawful conduct, *see* ECF No. 16, PageID.207–208, or that Defendant Grady is entitled to qualified immunity, *see id.* at PageID.208.

The Court nevertheless notes that to maintain a § 1983 claim, Plaintiff must allege that Defendant Grady has "actively participated in or authorized" unlawful actions. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted). However, the Complaint contains no allegations that Defendant Grady actively participated in or authorized any conduct that is unlawful.

### 3. Counts III and IV

Counts III and IV are brought under ELCRA, Mich. Comp. Laws § 37.2201–211, against Defendant Grady in his individual capacity. ECF No. 14, PageID.163–68. Specifically, Count III alleges retaliation in violation of ELCRA and Count IV alleges a hostile work environment in violation of ELCRA. *Id.*

### a. Whether Counts III and IV are barred by the Eleventh Amendment

Defendants argue that "[t]he Eleventh Amendment … bars Counts III and IV." ECF No. 16, PageID.210.

The Court disagrees.

Plaintiff brings these counts against Defendant Grady in his individual capacity. ECF No. 14, PageID.163–68. Accordingly, the Eleventh Amendment does not bar Counts III and IV. *Foulks v. Ohio Dep't of Rehab. & Correction*, 713 F.2d 1229, 1233 (6th Cir. 1983) ("The eleventh amendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities.").

Defendants argue that because "the allegations concern only conduct undertaken in his official role," the claims are somehow transformed into "[a]n official-capacity suit" barred by the Eleventh Amendment. ECF No. 16, PageID.209.

However, Defendants provide no citation for the proposition that an individual capacity suit against an officer alleging only conduct

43

undertaken in their official role is barred by the Eleventh Amendment. *Id.*

This omission is for a good reason: Defendants' position has been explicitly rejected by the Supreme Court. *Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."); *Jackson v. Gandy*, 877 F. Supp. 2d 159, 167 (D.N.J. 2012) ("The Eleventh Amendment does not, however, bar a suit against a state official acting in his or her individual capacity, even if the actions which are the subject of the suit were part of their official duties."); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1160 (E.D. Cal. 2017) ("However, the Eleventh Amendment does not bar suits against state officials sued in their individual capacity for acts taken during the course of their official duties.").

Accordingly, the Court rejects this argument.

### b. *Whether Count III fails to state a claim for retaliation*

As the Sixth Circuit has held—and as both parties agree, *see* ECF No. 16, PageID.209; ECF No. 18, PageID.255–56—courts review claims of retaliation under § 1981, ELCRA, and Title VII under the same standard. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018).

44

The Court has already concluded that Plaintiff fails to state a claim for retaliation against Defendant Grady in his individual capacity under § 1981. Thus, Defendants' motion to dismiss Count III on this ground is **GRANTED** and Count III is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity.

### c. Whether Count IV fails to state a claim for hostile work environment

Defendants argue that Plaintiff has failed to state a claim for hostile work environment. ECF No. 16, PageID.212–13. Specifically, Defendants argue that

> Plaintiff's conclusory allegations are insufficient to establish a hostile work environment claim against Col. Grady individually. Plaintiff does not allege that she was subject to intimidation or physical threats; persistent slurs; "inherently" sexual communications.
>
> Even if Plaintiff had alleged sufficient conduct, the individual-capacity claim against Col. Grady also fails because she did not plausibly allege that any such conduct is attributable to Col. Grady.

*Id.* at PageID.213 (citation omitted).

> In response, Plaintiff points to

> the conditions that Plaintiff was forced to work in, especially during and after the retaliatory conduct took place against her. Besides her demotion and forced office relocation, Plaintiff underwent a phony sexual harassment investigation brought against her in retaliation for her (inadvertently) reporting sexual harassment that took place against her. ECF No. 14, PageID.135, ¶ 96. During this false investigation, she

45

was removed from her position, told not to speak to any witnesses (including her husband), was informed that she was being demoted, that she had to return her car, and told not to come into work full time. Id. This sent Plaintiff into a state of distress, as she had not done anything wrong and this was not the treatment others had received when they were under investigation. The exacerbated retaliation Plaintiff experienced rose to the level of unnecessary harassment.

ECF No. 18, PageID.257. Additionally, under Count IV of the Complaint, Plaintiff lists following incidents of "harassment":

a)   Demoting her position and removing her support staff after she expressed to Defendant Grady a desire to abide by legal promotion procedures;

b)   Removing her one-on-one meetings after she expressed concern over the same;

c)   A retaliatory complaint being filed against her after a sexual harassment complaint was filed on her behalf without her knowledge;

d)   Being isolated and removed from various teams she was supposed to work closely with, including the leadership and HR teams;

e)   Being told she had to move her office to a cubicle on another floor, even when her rank afforded her an office space and her job required confidentiality;

f)   Having her access to vital software revoked;

g)   Not receiving the same bonus in 2024 as she had in 2023, even with identical reviews;

h)   Being told she needed to report to work an additional day a week more than other MSP employees; and

i)   Being told she had to return her take-home car 9 months earlier than everyone else.

ECF No. 14, PageID.166.

46

Under ELCRA, "[i]ndividuals can be considered 'employers'" *Misane v. City of Bangor*, No. 21-487, 2023 WL 2856692, at *4 (W.D. Mich. Apr. 10, 2023), "through delegation of general supervisory power and authority," *Harrison v. Michigan Dep't of Health & Hum. Servs.*, No. 22-12034, 2023 WL 4237580, at *8 (E.D. Mich. June 28, 2023) (Borman, J.) (cleaned up). Thus, Plaintiff "must allege that [Defendant Grady] had 'supervisory powers or authority to act' on behalf of [MSP] with respect to the alleged" harassing conduct. *See id.*

Read in the light most favorable to Plaintiff, the Complaint alleges that Defendant Grady had supervisory powers or authority to act with respect to following allegedly harassing conduct: cancelling Plaintiff's one-on-one meetings, ECF No. 14, PageID.139, requiring her to report in person an additional day per week, *id.* at PageID.158, moving Plaintiff to the Professional Development Bureau, *id.* at PageID.139, and other reassignments.

However, the Court finds that, even when read in the light most favorable to Plaintiff, this conduct as alleged does not create a hostile work environment.

"A work environment is actionable … if the workplace is permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013) (citation omitted). As the Sixth Circuit has explained,

47

> "The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a mathematically precise test." Courts must look at "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Under this totality-of-circumstances test, "the issue is not whether each incident of harassment *standing alone* is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case."

*Id.* at 814 (citations omitted).

For instance, the Sixth Circuit has found that the following allegations do not amount to a hostile work environment:

> [plaintiff] asserts that the following constitutes a hostile work environment: she was removed from her position without any opportunities to rebut the charges when she was reassigned to the Detroit office; she was isolated from other revenue officers in a cubicle; she operated for months under a TIGTA investigation that may have led to criminal charges; the DOT posted the opening for her former position at Mt. Clemens within days of her transfer; and she was ordered to read in the library.

*Khamati v. Sec'y of Dep't of the Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014). The Sixth Circuit concluded that "none of these actions, alone or cumulatively, amount to a sufficiently abusive work environment." *Id.*

Applying this standard, the alleged conduct simply does not amount to a hostile work environment. The alleged conduct is not frequent, it is not severe, physically threatening or humiliating, nor does it

48

unreasonably interfere with Plaintiff's work performance. This conclusion stands even if the Court were to consider the allegedly harassing conduct listed by Plaintiff in which Defendant Grady appears to have no involvement. When taken together, these actions are simply not sufficiently severe enough to constitute a hostile work environment.

Accordingly, the Court finds that the Complaint has failed to state a claim for hostile work environment against Defendant Grady. Thus, Defendants' motion to dismiss Count IV on this ground is **GRANTED** and Count IV is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity.[4]

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 16). Accordingly, Count I is **DISMISSED WITH PREJUDICE**, Count II is **DISMISSED WITH PREJUDICE** as to Defendant Grady in his official capacity, Count II is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity, Count III is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity, and Count IV is **DISMISSED WITHOUT PREJUDICE** as to Defendant Grady in his individual capacity.

---

[4] Defendants also argue that if Counts III and IV are not dismissed, the Court should decline to assert supplemental jurisdiction. ECF No. 16, PageID.213. Because Counts III and IV are dismissed, the Court need not address this argument.

Additionally, in light of Plaintiff's July 20, 2026 motion for leave to file a second amended complaint, ECF No. 22, Plaintiff's representations during the July 21, 2026 hearing, and Defendants' acquiescence during the July 21, 2026 hearing, the Court will allow Plaintiff to file a new complaint consistent with this Order. Any amended complaint must be filed by no later than July 29, 2026.

**SO ORDERED.**

Dated: July 23, 2026                    s/Terrence G. Berg

                                        HON. TERRENCE G. BERG
                                        UNITED STATES DISTRICT JUDGE